STEUDEL ET AL., APPELLEES, *v.* TROBERG ET AL., APPELLANTS.

(No. 1100—Decided May 23, 1945.)

*Messrs. Boer & McClelland* and *Mr. John B. Hancock,* for appellees.

*Mr. Wayne C. Black,* for appellants.

DOYLE, J. This case is submitted as an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Lorain county, wherein the defendants were enjoined from the operation of a boat rental business on property abutting on Lake Erie in the village of Sheffield Lake, Ohio.

The plaintiffs are the owners of adjacent property. Their suit was based upon a claimed violation of a zoning ordinance of the village, in that the defendants had unlawfully changed the use of the property. The trial court sustained the charges and issued an injunction.

The zoning ordinance of the village, enacted in 1928, restricted the use of the defendants' premises and the property adjacent thereto to residential purposes. It provided, however, that a nonconforming use existing at the time of the passage of the ordinance could be continued, and as a result thereof the property was used for the most part for restaurant purposes, with and without permits for the sale of beer, until the year 1942, when it came into the possession of the present defendants, who commenced the boat livery business, here under challenge.

The ordinance divides the uses of the property within the created district into four groups: 1, "residence classes"; 2, "business classes"; 3, "industrial classes"; and 4, "special classes." Subdivision 3 of group 2 (business classes) is as follows:

"Retail trade or shop for custom work or the making of articles to be sold at retail on the premises; restaurant; theatre; moving picture show. *Any use not included in any other class, providing such use is not*

*noxious or offensive by reason of the emission of odor, dust, smoke, gas or noise."* (Italics ours.)

Another provision of the ordinance (Section 8) undertakes to regulate the extension of a nonconforming use and to define the word "change" as applicable to a nonconforming use.

There is no specific provision *in any of the groups* for the operation of a boat livery business. It is asserted, therefore, that it may fall within the provisions of group 2, subdivision 3, if such use "is not noxious or offensive by reason of the emission of odor, dust, smoke, gas or noise." And if it can be there placed, then such use is not a "change" of use from the restaurant use within the definition of the word "change."

Inspection of Section 8 shows:

"A nonconforming use existing at the time of the passage of this ordinance *may be continued*. A nonconforming use shall not be extended except as authorized by the preceding section but the extension of a use to any portion of a building which portion was arranged or designed for such nonconforming use at the time of the passage of this ordinance shall not be deemed the extension of a nonconforming use. A building arranged, designed or devoted to a nonconforming use at the time of the passage of this ordinance may not be reconstructed or structurally altered to any extent exceeding in aggregate cost, during any ten-year period, 40% of the assessed value of the building unless the use of said building is changed to a conforming use. *A nonconforming use may not be changed unless changed to a higher use. * * * For the purpose of this ordinance a nonconforming use shall be deemed to be changed if changed from a use included in a subdivision of a use class to a use not included in such subdivision. * * *"*

It is obvious that the beer and restaurant business

could have been continued because of its existence at the time of the passage of the ordinance. It is likewise obvious that such business use could not be "changed," except to a use included in the "residence classes" (a higher use). Does the supplanting of the restaurant business with a boat livery business constitute a "change" as that word is used in the ordinance?

Under each of the four groups, heretofore mentioned, are several subdivisions, and in each subdivision there are in most cases several uses specifically mentioned, except that in subdivision 3 of group 2, heretofore set out in full, there appears a blanket provision covering uses not specifically mentioned.

As we construe the ordinance, a nonconforming use is not deemed "changed" if the use falls within the same subdivision of the use class. In other words, a "moving picture show," a "theatre," or a boat livery, if the latter is not noxious or offensive, etc., are all within the same use class, and a transfer from one to another within the subdivision does not constitute a change within the language used. If, however, a business not named or recognized in the particular subdivision supplants a business therein named or recognized, such use shall be deemed "changed" and therefore unlawful, unless changed to a higher use. If the village council did not intend this meaning of its ordinance, there was no reason for the incorporated provision.

Under the construction of the ordinance heretofore set forth, if the boat livery business "is noxious or offensive by reason of the emission of odor, dust, smoke, gas or noise," such use violates the ordinance and should be enjoined. If it cannot be so charged, it is a permissive use and should be permitted to operate.

The only evidence in the record on this question is that, in the operation of the business, boats are launched on Lake Erie, and many of them are oper-

ated by outboard motors which make a noise when running on the lake; also that various industrially employed persons, when off duty, and others, use the facilities for fishing and boating recreation during both the daytime and the nighttime. It does not appear that the business directly carried on, on the zoned premises, has any of the vices set out in the ordinance, but that noise does occur on the lake from the operation of the boats.

The title to the land under Lake Erie within the limits of the state of Ohio is in the state, as trustee for the benefit and welfare of all the people for the various public uses to which it may be adapted. The riparian owners are entitled as against all but the state "to certain valuable privileges or easements, of which one of the principal privileges is the right of access to the navigable part of the stream from the front of his land."

See cases cited in 41 Ohio Jurisprudence, Waters and Waterworks, Sections 114 and 117.

The waters of Lake Erie are open to all for fishing, boating and recreation, subject only to such control as the state and the federal government may exercise within their respective jurisdictions. The use of the waters cannot be controlled in these respects by abutting cities or villages. The use of motor boats on the lake has long been recognized as a legitimate use, regardless of the noise of the motors. And boat owners or renters, with or without motors, from far and near, could legitimately use the lake in front of the zoned premises if they desired.

It appears that property immediately adjacent to the premises in question is used for public recreation purposes, and that the boat livery in question, although privately operated, would enhance and improve the opportunities of the general public, in conjunction with the use of the public park, to enjoy to

a greater extent the natural resources of the territory.

The problem before this court on this phase of the case is whether the noise on Lake Erie is in legal contemplation noise on the zoned premises, and thereby brings about a violation of the ordinance.

The members of this court do not believe it necessary to discuss at length the philosophical or legal intricacies of "cause and effect." These questions have been the subject of debate through the ages. Interesting articles may be found in 72 Univ. of Pa. L. R., 211 and 343; 39 Harvard L. R., 149; Lord Haldane, The Reign of Relativity, pp. 125, 126.

It seems to us that our guide as to the meaning of the ordinance is the reasonable expectation and purpose of the ordinary man who sits in council chambers and enacts ordinances and laws for the welfare of the people at large. In this guide we follow the principle so well grounded in the law of contract construction—what was in the minds of the contracting parties?

It has been said that " 'Causation is not a chain, but a net. At each point, influences, forces, events, precedent * * *, meet, and the radiation from each point extends infinitely' (*Leyland Shipping Co.* v. *Norwich Fire Ins. Society, supra* [118 Law Times, 120]). From this complex web, the law picks out now this cause and now that one. The same cause producing the same effect may be proximate or remote as the contract of the parties seems to place it in light or shadow. That cause is to be held predominant which they would think of as predominant. A common-sense appraisement of everyday forms of speech and modes of thought must tell us when to stop. It is an act of 'judgment as upon a matter of fact.' "

*Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y., 47, at p. 51, 120 N. E., 86, 13 A. L. R., 875.

"Cause" is an extremely indefinite expression. "For

a majority of our population, the cause of fire is the match which, is lighted and applied. For the physicist the cause of the fire is the conversion of potential into kinetic energy, through the combination of carbon atoms with those of oxygen and the formation of oxides in the shape of gases which become progressively oxidized.'' In each case there is a different field of inquiry, determined from a different standpoint. In the treatment of the problem of causation before us, we must pick out the cause which in our judgment ought to be treated as the dominant one with reference, not only to the event itself, but to the legal consequences which ought to attach to it. And in our consideration of these legal consequences, we must be guided by the reasonable expectation and purpose of the members of the village council when the ordinance was enacted.

It is our conclusion that council did not intend to restrict in any way the use of Lake Erie, nor to treat the operation of a reasonably noiseless business on a zoned property as a cause to which consequential noise elsewhere, and on property over which they had no control, should be given legal cognizance.

Decree for appellants.

*Decree for appellants.*

WASHBURN, P. J., and STEVENS, J., concur.